```
                                                USDC SDNY
                                                DOCUMENT
                                                ELECTRONICALLY FILED
                                                DOC #: _____
                                                DATE FILED: 12/2/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DWAINE PERRY,

                                  Plaintiff,

                  -against-                              23-cv-11316 (NSR)

VILLAGE OF HILLBURN, JOSEPH P.                OPINION & ORDER
TRUST, ADAM L. GORDON, AND
LAWRENCE H. MCMANNIS

                                Defendants.

---

NELSON S. ROMÁN, United States District Judge:

Plaintiff Dwaine Perry ("Plaintiff") initiated this action on December 30, 2023, alleging violations of Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act, 29 U.S.C. § 794 *et seq*., as well as violations of the 1st Amendment and 5th Amendment against Defendants Village of Hillburn ("Hillburn"), Joseph P. Trust ("Trust"), Adam L. Gordon ("Gordon") and Lawrence H. McMannis ("McMannis") (together, the "Defendants").

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the following reasons, Defendants' Motion to Dismiss is GRANTED without prejudice.

## BACKGROUND

The following facts are derived from the Complaint and are taken as true and constructed in the light most favorable to the Plaintiff at this stage.

Plaintiff resides at 16 Boulder Avenue, Hillburn (the "Village" or "Hillburn"), New York. (Compl. ¶ 13.) Plaintiff is the elected Chief of the Ramapough Munsee Lunaape Nation ("Ramapough") and is a lifelong resident of Hillburn. (*Id*.) Plaintiff is a disabled, decorated Vietnam War Veteran. (*Id*.) Plaintiff is "handicapped" and has "limited mobility." (*Id*. ¶ 19.) On

1

October 26, 2021 Plaintiff attended a public Village Board meeting, questioning the efficacy and appropriateness of a proposed zoning amendment supported by Joseph Tursi, Mayor of Hillburn. (*Id.* ¶ 21.)

On March 3, 2022, the Village, without prior notice, installed no-parking signs on a vacant municipal lot ("parking lot") directly across from Plaintiff's home. (*Id.* ¶ 22.) Plaintiff and his family have parked on the parking lot for over a century. (*Id.* ¶ 23.) The Village thereby denied Plaintiff access to safe, accessible parking near his home. (*Id.* ¶ 24.) Thereafter, on September 15, 2022, the Village placed five large boulders about the parking lot, making it impossible for Plaintiff to access the parking lot in the event of a snow emergency. (*Id.* ¶ 25.) Plaintiff wrote letters to the Village demanding safe, accessible parking by way of access to the parking lot. (*Id.* ¶ 27.) Plaintiff asserts the Village violated the Americans with Disabilities Act by removing safe, accessible access to his home. (*Id.* ¶ 28.) Plaintiff alleges the Defendants have harassed, intimidated, and discriminated against him. (*Id.* ¶ 29.) Plaintiff claims the Defendants prohibited access to and use of the parking lot in retaliation against him because of his protesting a proposed zoning change that he believed would exacerbate inequality for Native Americans. (*Id.* ¶ 39.) Plaintiff claims that such action violated his "vested right[s]" to use the parking lot. (*Id.* ¶ 36.) Plaintiff asserts that by "losing convenient parking" his "health and personal safety are threatened." (*Id.* ¶ 41.)

Based on the foregoing, Plaintiff brings claims alleging violations of the ADA and the RA, as well as Section 1983 claims alleging violations of the 1st Amendment and the 5th Amendment.

## PROCEDURAL HISTORY

On December 30, 2023, Plaintiff commenced this action against the Defendants in his complaint (the "Complaint", ECF No. 1). Defendants filed a motion to dismiss and their memorandum of law in support (the "Motion" or "Mot.", ECF Nos. 9 and 11). Plaintiff filed an

2

opposition to the Motion ("the Opposition" or "Opp.", ECF No. 16). The Defendants filed a reply memorandum in further support of their Motion (the "Reply", ECF No. 13).

## LEGAL STANDARD

### A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B. Section 1983

Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected,

any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured." Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); see *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To assert a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. April 25, 2013); see *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. See Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.").

In order for a defendant in a Section 1983 action to be held liable, the plaintiff must demonstrate the defendant was personally involved in the alleged constitutional violations. *Whitton v. Williams*, 90 F. Supp. 2d 420, 427 (S.D.N.Y. 2000). Personal involvement is defined as "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Important context is that a defendant "in a § 1983 action is not liable simply on the basis of holding a high position of authority." *Dawson v. Cnty. of Westchester*, 351 F. Supp. 2d 176, 196 (S.D.N.Y. 2004). Additionally, "[p]leadings pursuant to § 1983 must contain 'more than mere conclusory

4

allegations.'" *Richard v. Fischer*, 38 F. Supp. 3d 340, 351 (W.D.N.Y. 2014) (quoting *Salahuddin v. Cuomo,* 861 F.2d 40, 43 (2d Cir.1988)).

### C. Title II of the ADA and the RA

The ADA and RA "impose identical requirements." *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *Tennessee v. Lane*, 541 U.S. 509, 513 (2004). To establish a violation of Title II, a plaintiff must allege that (1) he or she is a qualified individual with a disability; (2) the defendants are subject to the ADA; and (3) he or she was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of [his or her] disabilities." *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

## DISCUSSION

Plaintiff brings claims pursuant to the ADA, the RA, and Section 1983, alleging 1st Amendment and 5th Amendment violations.  The Court addresses them in turn.

### A. Title II of the ADA Claim and the RA Claim

In order to bring a claim for a violation of Title II of the ADA and the RA, the Plaintiff must fall into the category of a "qualified individual." To be a "qualified individual," a plaintiff must plausibly assert: 1) that they have a physical or mental impairment; and 2) that this

impairment substantially limits one or more major life activities. *Schwartz v. Comex*, 1997 WL 187353, *2 (S.D.N.Y. Apr. 15, 1997).

Plaintiff's allegations are fatally insufficient for the purposes of demonstrating Plaintiff is a qualified individual under the ADA and the RA. Plaintiff scarcely addresses his health conditions and any resulting impairments, stating in cursory fashion that he is "disabled," "handicapped," "has limited mobility," and asserts that loss of access to the parking lot would threaten "his health and personal safety" by "having to walk a very long distance in the dark." (Compl. ¶¶ 2, 13, 20, 41.) Beyond these allegations, Plaintiff does not substantively aver that he has a physical or mental impairment, and that any such impairment substantially limits one or more major life activities. *Schwartz*, 1997 WL 187353 at *2.

The Court is to interpret the term "disability" in favor of broad application of the ADA and RA. *See Shine v. New York City Hous. Auth.*, 2020 WL 5604048, *4 (S.D.N.Y. Sept. 18, 2020). At the same time, "[c]ourts require a plaintiff to do more than simply allude to h[is] impairments in her pleadings; []he must plead how those impairments significantly impacted [his] major life activities or []he will not survive a motion to dismiss." *Collins v. Giving Back Fund*, 2019 WL 3564578, *13 (S.D.N.Y. Aug. 6, 2019). Plaintiff merely stating that he is "handicapped" and has "limited mobility" is insufficient. *See Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005) (noting that "[n]ot every impairment is a 'disability' within the meaning of the ADA"). Plaintiff's assertion that he is a "qualified individual with a disability" is likewise unavailing. (Compl. ¶ 49.) Asserting that one is a "qualified individual" is similarly unhelpful, as it is a legal conclusion "couched as a factual allegation." *Iqbal*, 556 U.S. 662 at 678.

Accordingly, the Court finds that, as currently written, the Complaint fails to plausibly allege that the Plaintiff is a "qualified individual" in support of his claim for discrimination under Title II of the ADA and the RA and thus dismisses the claims without prejudice.

6

B. **Section 1983 - 1st Amendment Claim**

To prosecute a 1st Amendment retaliation claim, a plaintiff must allege that "(i) he has an interest protected by the 1st Amendment, (ii) the defendant's actions were motivated by or substantially caused by the plaintiff's exercise of that right; and (iii) the defendant's action effectively chilled the exercise of the plaintiff's First Amendment rights." *Connell v. Signoracci*, 153 F.3d 74 (2d Cir. 1998).

Plaintiff is able to satisfy the first prong of the 1st Amendment retaliation analysis - Plaintiff's objecting to the proposed zoning changes are undoubtedly interests protected by the 1st Amendment. *See Schubert v. City of Rye*, 775 F. Supp. 2d 689, 712 (S.D.N.Y. 2011). However, where Plaintiff's claim falls short is the second prong – that the Defendants' actions were substantially motivated by Plaintiff's exercise of his 1st Amendment Rights. Other than to assert in conclusory fashion that "[t]he blocking, cancellation and withdrawal of legal parking in proximity to Plaintiff's was carried out by the Defendants solely as punishment for speaking out publicly in opposition for the proposed zoning change," Plaintiff fails to provide particular facts in support of his assertion. (Compl. ¶ 39.)

The Court further notes, Plaintiff protested the Village's proposed zoning changes on October 26, 2021.[1] (*Id*. ¶ 21.) This date is revealing; according to certified minutes from the Hillburn Village Board of Trustees' meetings (specifically, from August 22, 2017), the Village was already considering blocking the parking lot long before the instant action and long before – over four years – Plaintiff's protesting the proposed zoning changes. (Mot. Ex. C, p. 9.) Moreover, said minutes reveal that the Village's motivation for blocking the parking lot was to resolve "disputes between residents." (*Id*.) According to the Village Board, if those disputes continued, "parking on

---

[1] In his Complaint, Plaintiff references the Village Board meeting wherein the proposed zoning changes were discussed.

the respective Village owned property [would] no longer be allowed." (*Id*.)  Thus, the Village's goal was not to punish Plaintiff for engaging in protected speech, but rather to end long-standing conflict between neighbors residing around the parking lot. (*Id*.) Additionally, it is important to note that the Village denying access to the parking lot applied to all neighbors – not just Plaintiff, further undermining Plaintiff's 1st Amendment retaliation claim. (*Id*.) Therefore, Plaintiff's 1st Amendment claim for retaliation must fail for Plaintiff's inability to demonstrate that Defendants' actions were "substantially motivated" by Plaintiff's exercise of his 1st Amendment rights.

Finally, it is worth noting that the gap in time between Plaintiff's protected speech and the Village placing no-parking signs in and boulders on the parking lot does not support Plaintiff's case for a 1st Amendment retaliation claim. Plaintiff stated his opposition at a Village Board meeting on October 26, 2021. (Compl. ¶ 21.) It was only once four months had passed that the Village installed no-parking signs on the parking lot, and only once eleven months had passed that the Village placed boulders on the parking lot. (*Id.* ¶ 25.) On one hand, courts in this Circuit have "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001). On the other hand, considering the totality of the circumstances, given the Village was already considering denying access to the parking lot for reasons preceding and unrelated to Plaintiff's protected speech, and given that the Village took action many months after Plaintiff speaking at the Village Board meeting, the Court finds that there was insufficient temporal proximity between Plaintiff's protected speech and the Village's actions to support a 1st Amendment retaliation claim. Therefore, the Court finds that, as currently written, the Complaint has failed to state a plausible 1st Amendment retaliation claim and thus dismisses the claim without prejudice.

### C. Section 1983 – 5th Amendment Claim

To state a 5th amendment Takings Clause claim, a plaintiff must show: "(1) that they have a property interest protected by the 5th Amendment, (2) that they were deprived of that interest by the government for public use, and (3) that they were not afforded just compensation." *Ganci v. New York City Transit Auth.*, 420 F. Supp. 2d 190, 195 (S.D.N.Y.).

Plaintiff's claim fails under the first prong of the 5th Amendment Takings Clause analysis. Plaintiff has not demonstrated that he had any property interests in the parking lot. To the contrary, Defendants have furnished a copy of a deed wherein the Village acquired the parking lot, dated December 23, 1937. (Mot. Ex. B.). The Court is empowered to take judicial notice of recorded deeds. *See Contempo Acquisition, LLC v. U.S. Dep't of Hous. & Urb. Dev.,* 2007 WL 3254916 (S.D.N.Y. Oct. 30, 2007); *see also Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018); *Porrazzo v Bumble Bee Foods, LLC*, 822 F.Supp.2d 406, 411 (S.D.N.Y. Sept. 30, 2011). The record plainly establishes that the Village, and only the Village, had a property interest in the parking lot. Indeed, in tacit recognition of the Village's exclusive property interest in the parking lot, the Plaintiff sought on several occasions to purchase the property encompassing the parking lot. (*See generally* Mot. Ex. C.)

Moreover, Plaintiff's attempts to argue that he acquired a possessory interest in the parking lot by way of, for example, prescriptive easement, also hold no weight. It is well established that a municipality, where owning the property in its governmental capacity, cannot lose title to that property by means of adverse possession or prescriptive easement. *See Mazzei v. Metro. Transportation Auth.,* 164 A.D.3d 1227, 1228 (2018) (noting that "a municipality cannot lose title through adverse possession to property which it owns in its governmental capacity"); *see also Casini v. Sea Gate Ass'n*, 262 A.D.2d 593, 594 (1999); *Dominici v. Lentini*, 24 F. App'x 86, 90 (2d Cir. 2001); *Pirman v. Confer,* 273 N.Y. 357, 363-364 (1937).

9

Lastly, Plaintiff's argument that he has a vested right by way of a non-conforming use existing at the time of Hillburn's zoning ordinance is also unavailing. Plaintiff's notes that his use of the parking lot predated the Village's zoning ordinance enacted April 26, 1989. (Compl. ¶ 36.) To reiterate the relevant standard, a "vested nonconforming use is defined as one that came into existence before the enactment of the zoning ordinance that prohibits its use and that is continuously maintained after the zoning changes take effect." *Edelhertz v. City of Middletown*, 943 F. Supp. 2d 388, 394 (S.D.N.Y. 2012). Furthermore, "[u]nder New York law, a nonconforming use that predates the enactment of a restrictive zoning ordinance is a vested right and is entitled to constitutional protection." *Id*.

Plaintiff's focus here is misplaced. The issue arising regarding the parking lot is not that a zoning ordinance rendered a previously lawful use of the parking lot prohibited, as needed to support a nonconforming use argument per *Edelhertz*; rather, it arises from the rightful title holder, the Village, no longer allowing Village residents to make use of the parking lot due to continuous disputes between neighbors surrounding the subject property. Thus, a theory of nonconforming use is not responsive to the actual facts of this case as there was no prior lawful use rendered prohibited by a zoning ordinance. Therefore, as currently written, the Complaint fails to plausibly allege a 5th Amendment Takings Clause claim, and the Court dismisses the claim without prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants Village of Hillburn, Joseph Tursi, Adam L. Gordon, and Lawrence H. McMannis' motion to dismiss Plaintiff Dwaine Perry's claims. Defendants' motion is granted without prejudice as to Plaintiff's ADA claim, Plaintiff's RA claim, and as to Plaintiff's Section 1983 1st Amendment claim and 5th Amendment claim. Plaintiff is granted leave to file a First Amended Complaint by January 17, 2025. Plaintiff is

advised that the First Amended Complaint will replace, not supplement, the Complaint, and so any claims that he wishes to pursue must be included in, or attached to, the First Amended Complaint. Should Plaintiff file a First Amended Complaint, the Defendants are directed to answer or otherwise respond by February 18, 2025, and the parties are directed to confer, complete and file a Case Management Plan and Scheduling Order (blank form attached) by March 17, 2025. If Plaintiff fails to file a First Amended Complaint within the time allowed, those claims that were dismissed without prejudice shall be deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 9.

Dated:  December 2, 2024                              SO ORDERED:
       White Plains, New York

                                                          NELSON S. ROMÁN
                                           United States District Judge

UNITED STATES DISTRICT COURT  Rev. Jan. 2012

SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

                                                  **CIVIL CASE DISCOVERY PLAN**

                  Plaintiff(s),        **AND SCHEDULING ORDER**

   - against -

                  Defendant(s).     _____ CV _____ (NSR)

---------------------------------------------------------------x

This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____.

5.      Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter.  The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.      First request for production of documents, if any, shall be served no later than _____.

7.      Non-expert depositions shall be completed by _____.

        a.      Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

        b.      Depositions shall proceed concurrently.

        c.      Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8.      Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.      Requests to Admit, if any, shall be served no later than _____.

10.     Expert reports shall be served no later than _____.

11.     Rebuttal expert reports shall be served no later than _____.

12.     Expert depositions shall be completed by _____.

13.     Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.     **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)


SO ORDERED.


Dated:   White Plains, New York

         _____

                                                    _____
                                                    Nelson S. Román, U.S. District Judge