USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  ___3/4/2026___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DWAINE C. PERRY

                Plaintiff,

        -against-

VILLAGE OF HILLBURN, JOSEPH P. TURSI, in his capacity as the Mayor, ADAM L. GORDON, in his capacity as Building/Fire Inspector, LAWRENCE H. MCMANNIS, in his capacity as Assistant Building Inspector,

                Defendants.

---

**23 CV 11316 (NSR)**

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge, S.D.N.Y.

Plaintiff Dwaine C. Perry ("Plaintiff") initiated this action on February 21, 2025, alleging violations of Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("RA"), and 42 U.S.C. § 1983 of the Civil Rights Act ("Section 1983") claiming First Amendment retaliation violation and Fifth Amendment takings violation against Defendants Village of Hillburn ("Hillburn" or "Village"), Joseph P. Tursi, in his capacity as the Mayor ("Tursi"), Adam L. Gordon, in his capacity as Building/Fire Inspector ("Gordon"), Lawrence H. McMannis in his capacity as Assistant Building Inspector ("McMannis") (collectively, "Defendants").

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the following reasons, Defendants' Motion to Dismiss is GRANTED.

1

**BACKGROUND**

### A. Factual Background

The following facts are derived from the FAC[1] and are taken as true and construed in the light most favorable to Plaintiff at this stage.

Plaintiff resides at 13 Boulder Avenue, Hillburn, New York.[2] (FAC ¶¶ 1, 14, 19.) He identifies as the elected Chief of the Ramapough Munsee Lunaape Nation and a disabled Vietnam War veteran. (*Id.* ¶¶ 2, 14, 19–20.) The dispute centers on Tax Lot 47.14-1-17 ("vacant lot") located directly across the street from Plaintiff's residence. (*Id.* ¶¶ 4, 21.) Plaintiff alleges that he and his family have parked on the vacant lot for over 100 years without interruption. (*Id.* ¶¶ 5, 21.) Plaintiff's residence was constructed around 1910 on top of a large bedrock outcropping. (*Id.* ¶ 22.) While a portion of the property was paved to create a handicap ramp for his late wife, the ramp has a steep grade of over 25%, rendering it unsafe and unusable as a driveway due to risks of vehicle damage and sliding. (*Id.* ¶¶ 22–23.) Consequently, Plaintiff has consistently parked in the vacant lot across the street from his home rather than on his own property. (*Id.* ¶ 24.)

On October 26, 2021, and November 18, 2021, Plaintiff attended Village Board meetings to oppose a zoning amendment supported by Tursi. (FAC ¶¶ 25–26.) Plaintiff voiced concerns that the proposed changes would lead to uncertified, segregated schools and result in the forced displacement of Ramapough residents through increased taxation and diminished services. (*Id.* ¶¶ 26–27.) Plaintiff alleges that on the night of the November 18 meeting, Tursi threatened a business associate of Plaintiff, Alex Krutyansky. (*Id.* ¶ 28.) Tursi allegedly stated that because Plaintiff questioned the

---

[1] The FAC here appears substantially similar to a previous complaint filed in this Court by the same plaintiff against the same defendants, alleging the same claims regarding the same parcel of land. (FAC ¶¶ 14–18, 45–69.) *See* Perry v. Vill. of Hillburn, No. 23-CV-11316 (NSR), 2024 WL 4932528, at *1 (S.D.N.Y Dec. 2, 2024) (hereinafter, "*Perry I*") (internal citations omitted). *Compare* (ECF No. 1 at 13–41 *with* FAC at 19–44), Perry v. Vill. of Hillburn, No. 23-CV-11316 (S.D.N.Y. Feb. 21, 2025) (alleging an identical core set of operative facts).

[2] Plaintiff is inconsistent as to whether his residence is located at 13 Boulder Avenue or 16 Boulder Avenue. The Court acknowledges that this may be a typographical error and that the correct address is 13 Boulder Avenue.

zoning law, a proposed business project was "on hold" and that Plaintiff "was going to have a lot of problems." (*Id.*) Following this alleged threat, the Village commenced enforcement actions regarding the vacant lot. (*Id.* ¶¶ 29–30.) On January 6, 2022, Gordon sent Plaintiff a letter warning that his truck and trailer were parked on the vacant lot and must be removed. (*Id.* ¶ 29.) On February 23, 2022, Plaintiff received an "Order to Remedy Violations" warning fines of up to $250 per day. (*Id.* ¶ 30.)

On March 2, 2022, the Village dispatched a tow truck to remove Plaintiff's vehicle. (FAC ¶ 32.) Plaintiff moved his vehicle to the street to avoid towing. Plaintiff alleges that at the time of the attempted tow, no signage prohibited parking on the vacant lot. (*Id.*) On March 3, 2022, without a resolution by the Village Board of Trustees, the Village installed "No Parking" signs on the vacant lot. (*Id.*) On September 15, 2022, the Village placed five large boulders on the vacant lot, physically blocking all vehicular access. (*Id.* ¶ 34.) Plaintiff alleges this action was taken without notice or due process. (*Id.* ¶¶ 7, 34.)

On November 2, 2022, Plaintiff's counsel submitted a request to the Village for a "reasonable accommodation" under the ADA to allow Plaintiff to park in the vacant lot due to his "mobility issues" and the "unsafe grade" of his own property. (FAC ¶ 35.) The Village did not provide the requested accommodation. (*Id.* ¶¶ 11, 56.) The Village Code prohibits street parking during snowstorms. (*Id.* ¶¶ 8, 36.) Plaintiff alleges that by blocking the vacant lot, the Village forced him to park illegally on the narrow street during inclement weather. (*Id.* ¶¶ 8, 10, 37.) Consequently, on January 11, 2025, Plaintiff was issued a violation and a $100 fine for parking on the street during a snowstorm. (*Id.* ¶ 42.) Plaintiff alleges these actions constitute a taking of his vested property right and have diminished the value of his home by at least $350,000. (*Id.* ¶¶ 9, 60–61.)

### B. Procedural History

On December 30, 2023, Plaintiff commenced this action against Defendants in his Complaint. (ECF No. 1.) Defendants filed a motion to dismiss and their memorandum of law in support (ECF Nos. 9, 11.) Plaintiff filed an opposition to the motion, and Defendants replied. (ECF Nos. 16, 13.) On December 2, 2024, the Court issued an Opinion & Order granting Defendants' motion to dismiss without prejudice, further granting Plaintiff leave to file a FAC to cure the deficiencies (ECF No. 17.) Specifically, Plaintiff (1) failed to allege that he was a "qualified individual" under the ADA, (2) failed to demonstrate the but-for causation required for a First Amendment retaliation claim, and (3) failed to demonstrate a protected property interest to support a Fifth Amendment takings claim. (ECF 17, Opinion & Order.) The Court warned that failure to amend timely would result in claims that were dismissed without prejudice being deemed dismissed with prejudice. (*See generally id.*)

On February 21, 2025, Plaintiff filed his FAC, which is the operative complaint.[3] (ECF No. 20.) This new pleading reasserted three causes of action: (1) violations of the ADA and RA, (2) taking of property under the Fifth Amendment, and (3) First Amendment retaliation. (*Id.*) Defendants again moved to dismiss and filed a supporting memorandum of law. ("Dfts. Mot. & Mem.," ECF Nos. 24 and 26.) Plaintiff opposed,[4] ("Pltf. Opp.," ECF No. 32.) and Defendants replied. ("Dfts. Reply," ECF No. 31.)

---

[3] Plaintiff failed to submit a redlined version of the ". . . pleading that shows . . . all differences from the pleading that it is intended to amend or supplement," in violation of S.D.N.Y Local Civil Rule 15.1 Amendment of Pleadings. S.D.N.Y Local Civ. R. 15.1.

[4] Although the Court considered the arguments presented in opposition, Plaintiff did not adhere to the prescribed page limit, submitting an opposition that exceeded the 25-page limit. *See* S.D.N.Y. Local Civ. R. 7.1 Form and Length of Briefs, Motions, and Other Papers. Further, this Court declines to consider the new exhibits attached to Plaintiff's opposition that were not included in the FAC. Documents appended for the first time in opposition to a motion to dismiss promote "litigation by ambush" and are properly excluded. *See* In re Turquoise Hill Resources Ltd., quoting Wade Park Land Holdings, LLC v. Kalikow, 2023 WL 2614243, at *10 (S.D.N.Y. Mar. 23, 2023), aff'd sub nom. In re Wade Park Land Holdings, LLC, 2024 WL 3024648 (2d Cir. June 17, 2024).

**LEGAL STANDARD**

**A. Rule 12(b)(6)**

A motion to dismiss raises a pure question of law. "To survive a [12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Court must examine the complaint's remaining factual allegations so as to ascertain their plausibility. *Iqbal*, 556 U.S. at 679. The Court in *Iqbal* held that the claims were implausible in light of "more likely explanations." *Iqbal*, 556 U.S. at 681.

The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). While the *Rothman* rule regarding relied-upon documents holds, the Second Circuit has become stricter about what constitutes a "written instrument" under Rule 10(c) in other contexts. For instance, the Second Circuit has held that an affidavit attached to a complaint is generally not considered a "written instrument" for these purposes. *See Smith v. Hogan*, 794 F.3d 249, 254 (2d Cir. 2015). The critical inquiry is whether Plaintiff has

pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B.  Section 1983

Section 1983 provides, in relevant part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured.

42 U.S.C § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To assert a claim under Section 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010); *Annis v. Cty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution.").

Furthermore, under Section 1983, municipality liability arises only where an official policy, custom, or practice causes the alleged constitutional injury, as Section 1983 does not permit liability on a *respondeat superior* theory. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–94 (1978); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). In addition, plaintiff must show both the

existence of a municipal policy or custom and a direct causal link between that policy and the alleged deprivation. *See City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989). Finally, isolated acts by non-policymaking employees are insufficient; only decisions of final policymakers or actions taken pursuant to official policy may subject a municipality to liability. *See Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012).

### C. Title II of the ADA and the RA

The ADA and RA "impose identical requirements." *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *Tennessee v. Lane*, 541 U.S. 509, 513 (2004). To establish a violation of Title II, a plaintiff must allege that (1) he or she is a qualified individual with a disability; (2) the defendants are subject to the ADA; and (3) he or she was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of [their] disabilities." *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

Furthermore, a "qualified individual with a disability" under Title II of the ADA must demonstrate that their impairment substantially limits one or more of their major life activities. *See Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005); *Addoo v. NYC Bd. of Ed.*, 268 Fed. Appx. 141, 142–43 (2d Cir. 2008). "Factors to consider in determining whether a major life activity is substantially limited include: the nature and severity of the impairment; its duration or expected duration; and the existence of any actual or expected permanent or long term impact." *O'Hara v. Bd. Of Coop. Educ. Servs., S. Westchester*, No. 18-CV-8502 (KMK), 2020 WL 1244474, at \*12

(S.D.N.Y. Mar. 16, 2020) (citing *Capobianco* 422 F.3d at 57). Similarly, the RA defines a "handicapped person" as "any person who (i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment," 45 C.F.R. § 84.3(j)(1); *see* 29 U.S.C. § 705(20)(B). The RA protects qualified individuals and applies to programs or activities that receive federal financial assistance. *See id.*

### D. Law-of-the-case Doctrine

The law-of-the-case doctrine "holds that when a court has ruled on an issue, that decision should generally be adhered to by the court in subsequent stages unless cogent and compelling reasons militate otherwise." *Delville v. Firmenich, Inc.*, 23 F. Supp. 3d 414, 425 (S.D.N.Y. 2014) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)). Additionally, the law-of-the-case doctrine generally holds that a court should adhere to its prior rulings in the same litigation to ensure stability and consistency. Essentially, although not binding, the law-of-the-case doctrine counsels courts against revisiting the prior rulings unless compelling reasons, such as the need to correct a clear error or prevent manifest injustice, exist. *See In re Peters*, 642 F.3d 381, 386 (2d Cir. 2011); *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 112 (S.D.N.Y. 2010).

### DISCUSSION

Plaintiff asserts claims under Title II of the ADA, Section 504 of the Rehabilitation Act, and Section 1983, alleging First Amendment retaliation and a Fifth Amendment taking. (*See generally* FAC.) The Court addresses the statutory claims first and then turns to the constitutional claims under Section 1983.

### I. Title II ADA and RA Claims

In *Perry I*, this Court dismissed Plaintiff's ADA and RA claims for failure to demonstrate that (1) Plaintiff is a "qualified individual" under those statutes and (2) that Plaintiff did not provide more

facts on how his disability affects major life events. (*Perry I* ¶ 7.) Specifically, this Court noted three specific deficiencies: (1) Plaintiff merely stated he was "disabled," "handicapped," and had "limited mobility" without substantively averring how these conditions limited a major life activity, (2) the bare assertion of being a "qualified individual" was a legal conclusion couched as a factual allegation, (3) Plaintiff was not specific enough to show how his impairment significantly impacted major life activities, as "[n]ot every impairment is a 'disability' within the meaning of the ADA." (*Id.* ¶¶ 6–7.)

To state a claim under Title II of the ADA, a plaintiff must plausibly allege that: (1) he is a qualified individual with a disability[5]; (2) the defendant is subject to the statute; and (3) he was excluded from participation in, denied the benefits of, or otherwise discriminated against with respect to a public entity's services, programs, or activities, by reason of plaintiff's disability. *See* 42 U.S.C. § 12132; *see also Henrietta*, 331 F.3d at 272 (citing *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998) (noting elements to establish a violation under the ADA)). The RA imposes materially identical requirements. *See Wright v. New York State Department of Corrections*, 831 F.3d 64, 72 (2d Cir. 2016); *Rodriguez*, 197 F.3d at 618.

A. *Qualified Individual with a Disability*

Plaintiff alleges that he has a reconstructed left patella and that his walking is "limited and uncomfortable." (FAC ¶ 2; Ex. 2.) Under the ADA, an impairment must "substantially limit" a major life activity as compared to most people in the general population. 29 C.F.R. § 1630.2(j)(1)(ii). "Major life activities" are defined in part as "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." 29 C.F.R. §

---

[5] "Under the ADA, a qualifying disability must limit a major life activity and the limitation must be substantial." Dominguez v. Bd. of Educ. of Yonkers City Sch. Dist., No. 23-CV-2460 (NSR), 2025 WL 1285862, at *3 (S.D.N.Y. May 2, 2025) (citing Langella v. Mahopac Central Sch. Dist., No.18-CV-10023 (NSR), 2023 WL 2529780 at *3 (S.D.N.Y. Mar. 15, 2023)).

1630.2(i)(1)(i). While walking is a recognized major life activity, the FAC does not allege facts describing the extent, frequency, or severity of Plaintiff's limitation, nor does it allege how his ability to walk differs from that of most people. The attached medical note characterizes his walking only as "limited and uncomfortable." (FAC ¶ Ex. 2.) That description, without further factual enhancement, does not plausibly allege a substantial limitation within the meaning of Title II of the ADA.

Moreover, although Plaintiff's prior left patella fracture is longstanding, the FAC does not plausibly allege that such impairment results in a significant restriction of the major life activity—walking. Describing walking as "uncomfortable" and noting eligibility for disabled parking or the need for a ramp alone does not establish a substantial limitation. Courts in this Circuit consistently determine that there is a relatively high bar when determining when the activity of walking has been substantially limited. *See Potenza v. City of N.Y. Dep't of Transp.*, No. 00 Civ. 0707, 2001 WL 1267172, at *10 (S.D.N.Y. Oct. 23, 2001), *aff'd in part*, 95 Fed. App'x 390 (2d Cir. 2004); *Watson v. Arts & Entm't Television Network*, No. 04 Civ. 1932, 2008 WL 793596, at *12 (S.D.N.Y. Mar. 26, 2008) ("Courts in this district have repeatedly held that the need to walk slowly and the inability to walk long distances or long periods of time. . . do not constitute substantial limits on walking) (collecting cases); *Cady v. Bolivar-Richburg Cent. Sch. Dist.*, No. 12-CV-01121, 2016 WL 8291111, at *7 (W.D.N.Y. Nov. 28, 2016) (experiencing moderate difficulty or pain while walking does not constitute a substantial limitation under the ADA); *Graham v. Three Village Central Sch. Dist.*, 2013 WL 5445736, at *18 (E.D.N.Y. Sep. 30, 2013) ("The fact that an individual has a visible limp or type of walking impairment does not *per se* establish an ADA-qualifying disability.")

Accordingly, because Plaintiff fails to allege sufficient facts demonstrating a substantial limitation of a major life activity, he has not plausibly pleaded that he is a "qualified individual" under the ADA or the RA. *See Capobianco*, 422 F.3d at 56.

B. *Denial of a Public Service, Program, or Activity*

Even assuming arguendo that Plaintiff plausibly alleged a qualifying disability, the ADA and RA claims independently fail because the FAC does not plausibly allege exclusion from a public service, program, or activity. 42 U.S.C. § 12132; *see also Henrietta*, 331 F.3d at 272. Plaintiff alleges that the Village restricted parking on a vacant lot that it owns. (FAC ¶ 4.) The FAC does not identify any municipal service or program from which Plaintiff was excluded based on his impairment. Nor does it allege that non-disabled individuals were granted access while Plaintiff was denied access because of his disability. *See Henrietta*, 331 F.3d at 277. Title II guarantees meaningful access to public services; it does not create a property right in continued access to municipal land. *See id.* at 282 (quoting *Alexander v. Choate*, 469 U.S. 287, 301 (1985)); *see also Smith-Berch, Inc. v. Baltimore County, Md.*, 68 F. Supp. 2d 602, 627 n. 25 (D. Maryland 1999) (citing *Kornblau v. Dade County*, 86 5.3d 193, 194 (11th Cir. 1996)) ("Title II of the ADA cannot reasonably be read to grant WMI a property right in a zoning permit for the Pulaski Highway property").

Because the FAC does not plausibly allege that Plaintiff is a qualified individual or that he was denied meaningful access to a public service by reason of his disability, the ADA and RA claims must be dismissed.

II.    **Section 1983 Claims**

Plaintiff asserts First Amendment retaliation and Fifth Amendment takings claims under Section 1983 against Defendants. (FAC ¶ 15–18.)

To state a claim under Section 1983, a plaintiff must allege that "(1) the challenged conduct was attributable to a person acting under color of state law, and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Cornejo*, 592 F.3d at 127. Because the individual Defendants ("Tursi, Gordon, and McMannis") are sued only in their official capacities, the Section 1983 claims against them are treated as claims against the municipality itself. They are duplicative of

11

the claim against the Village. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Accordingly, the Section 1983 claims against the individual Defendants in their official capacities are dismissed as moot. The Court, therefore, analyzes municipal liability.

### A. Municipal Liability (Monell)

Municipalities are not vicariously liable under Section 1983 for their employees' actions. *Monell*, 436 U.S. at 692 (Section 1983 liability attaches only where the execution of a government's policy or custom inflicts the injury). To state a viable *Monell* claim, a plaintiff must allege (1) a municipal policy or custom, and (2) a direct causal link between that policy and the alleged injury. *City of Canton*, 489 U.S. at 388–89; *see also Segal*, 459 F.3d at 219 (policy must be the "moving force" behind the violation); *Cuellar v. Love*, No. 11-CV-3632 (NSR), 2014 WL 1486458, at *9 (S.D.N.Y. Apr. 11, 2014) (dismissing claim for failure to allege any official practice or policy). The FAC does not plausibly allege any such basis for municipal liability.

First, the FAC does not identify a formally adopted Village policy that directs retaliation or authorizes an unconstitutional taking. On the contrary, FAC alleges the Village in fact failed to proceed, "without notice, [pursuant to] a resolution or approval of expenditures by Village Board of Trustees." (FAC ¶ 33.) The allegations concern discrete enforcement actions relating to a single parcel of Village-owned property. Second, the FAC does not allege a pattern of similar conduct sufficient to establish a municipal custom, or failure thereof. Allegations arising from a single dispute with a single property owner do not plausibly establish the existence of a widespread practice. *See Segal*, 459 F.3d at 219. Third, although Plaintiff references actions by the individual Defendants in their official capacities, the FAC does not plausibly allege that the challenged actions were undertaken pursuant to a resolution or decision of the Village Board, or pursuant to a decision by an official

possessing final policymaking authority with respect to the relevant municipal action, such that the conduct may fairly be said to represent official municipal policy.

At most, the FAC alleges that individual officials enforced parking restrictions and installed signage and barriers on Village-owned land. Such allegations, without factual enhancement connecting them to an unconstitutional municipal policy, are insufficient to state a *Monell* claim. Because Plaintiff has not plausibly alleged that any constitutional violation was caused by a municipal policy, custom, or final policymaker decision, the Section 1983 claims fail on that basis alone. Nevertheless, in the interest of completeness, the Court briefly addresses the substance of Plaintiff's First and Fifth Amendment theories, which independently fail as a matter of law.

### B. First Amendment Retaliation Claim

To state a First Amendment retaliation claim under Section 1983, a plaintiff must plausibly allege that: (1) he engaged in protected speech; (2) defendants took adverse action against him; and (3) there was a causal connection between the protected speech and the adverse action. *See Connell v. Signoracci*, 153 F.3d 74 (2d Cir. 1998); *Nieves v. Bartlett*, 587 U.S. 391 (2019) (reaffirming but-for causation requirement).

### i.    Collateral Estoppel

The Court first considers whether Plaintiff's retaliation claim is barred by collateral estoppel. Under New York law, collateral estoppel applies if "[i] the issues of both proceedings [are] identical, [ii] the relevant issues were actually litigated and decided in the prior proceeding, [iii] there [was a] 'full and fair opportunity' for the litigation of the issues in the prior proceeding, and [iv] the issues were necessary to support a valid and final judgment on the merits."[6] *Lefkowitz v. McGraw-Hill Glob.*

---

[6] In assessing these requirements, however, the Court is mindful that "[d]espite the economies achieved by use of collateral estoppel, it is not to be mechanically applied, for it is capable of producing extraordinary harsh and unfair results." Headsup Penny, Inc. v. City of Newburgh, No. 22 CV 02796 (NSR), 2023 WL 2648845, at *9 (S.D.N.Y. Mar. 27, 2023) (*citing* Remington Rand Corp. v. Amsterdam–Rotterdam Bank, N.V., 68 F.3d 1478, 1486 (2d Cir. 1995)).

*Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 359 (S.D.N.Y. 2014) (citing *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995)). Those requirements are satisfied here.

In the prior Article 78 proceeding ("St. Ct. Act." or "state court action" or "Article 78 proceeding"), Plaintiff challenged the same enforcement actions relating to the same Village-owned vacant lot and alleged that those actions were undertaken in retaliation for his opposition to a zoning amendment. (St. Ct. Act. ¶¶ 2–7.) The state court was required to evaluate the substantive viability of Plaintiff's Section 1983 claims in determining whether to excuse his failure to file a Notice of Claim. (*Id.* ¶¶ 8–9.) In doing so, the court concluded that Plaintiff failed to allege an actionable municipal policy and failed to establish that the enforcement actions would not have occurred but for his protected speech. (*Id.* ¶¶ 12–14.)

At bottom, the state court's determination was merits-based and necessary to its disposition, not a passing observation, and Plaintiff had a full and fair opportunity to litigate the issue. Specifically, the issue of retaliatory motive—that is, whether Plaintiff's speech was the but-for cause of the enforcement measures—was actually litigated and squarely decided. That determination was not dicta; it formed the basis for the court's conclusion that Plaintiff's claims lacked merit and thus did not warrant relaxation of the Notice of Claim requirement. An issue decided as an alternative or independent ground may carry a preclusive effect where it was fully litigated and essential to the result. *See Malloy v. Trombley*, 50 N.Y.2d 46, 53 (1980).

Plaintiff's contention that Article 78 proceedings limit the availability of damages does not defeat preclusion. Collateral estoppel concerns whether a factual or legal issue was decided, not whether the full range of remedies was available. Plaintiff had a full and fair opportunity to litigate the question of retaliatory causation and municipal liability.

14

Accordingly, Plaintiff is precluded from relitigating the issue of retaliatory motive in this Court.

ii.    Independent Failure to Plead But-For Causation

Even if Plaintiff were not precluded from relitigating retaliatory motive, the FAC independently fails to plausibly allege but-for causation. To satisfy the third element of a retaliation claim, Plaintiff must plausibly allege that the adverse action would not have occurred absent his protected speech. *See Connell*, 153 F.3d at 74.

Temporal proximity alone is insufficient to establish a retaliatory motive where legitimate, preexisting reasons for the challenged action exist. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (causal inference weakened where adverse actions were already in motion before protected conduct). The state court found that Village Board minutes reflect discussion of restricting parking on the lot as early as 2017, years before Plaintiff's protected speech in 2021. (St. Ct. Act. ¶ 11 n.11.) The FAC does not plausibly allege facts overcoming that chronology. Nor does the FAC allege similarly situated individuals treated differently, statements linking enforcement to Plaintiff's speech, or other nonconclusory facts supporting retaliatory intent. Instead, it asserts that enforcement occurred "because" Plaintiff spoke out. Such conclusory allegations are insufficient under *Iqbal*, 556 U.S. at 678.

Accordingly, the retaliation claim independently fails for lack of plausible but-for causation.

*C. Fifth Amendment Takings Claim*

The U.S. Constitution prohibits the government from taking private property for public use "without just compensation." U.S. Const. amend. V. There are two ways that a Takings Clause case can be recognized: "physical takings and regulatory takings." *1256 Hertel Ave, Associates, LLC v. Calloway*, 761 F.3d 252, 263 (2d Cir. 2014) (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l*

*Planning Agency*, 535 U.S. 302, 322 (2002)). A physical taking happens when property is either condemned or physically appropriated. *See id.* In contrast, a regulatory taking happens when, even without physically taking property, government regulation of private property "goes too far" and essentially amounts to a direct taking or eviction. *See Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005).

To state a claim under the Takings Clause, a plaintiff must plausibly allege (1) a constitutionally protected property interest, (2) a taking of that interest for public use, and (3) the absence of just compensation. *See Ganci v. N.Y.C. Transit Auth.*, 420 F. Supp. 2d 190, 195 (S.D.N.Y. 2005). The existence of a protected property interest is a threshold requirement. *See id; Story v. Green*, 978 F.2d 60, 62 (2d Cir. 1992) ("to state a claim under . . . the Takings Clause, [a] plaintiff[] [is] required to allege facts showing that the state action deprived them of a protected property interest."). If no such interest is plausibly alleged, the claim fails as a matter of law. Thus, Plaintiff fails at the threshold to plausibly allege a constitutionally protected property interest.

      i.      Collateral Estoppel and Law-of-the-Case Doctrine

In *Perry I*, this Court dismissed Plaintiff's takings claim because he failed to allege a protected property interest. (*Perry I* ¶ 10.) The Court specifically rejected Plaintiff's reliance on a "vested non-conforming use" theory, explaining that the dispute concerns the Village's decision, as landowner, to restrict use of its own property—not a zoning enactment prohibiting a lawful private use. (*Id.*) Despite this clear instruction, Plaintiff's FAC doubles down on the same theory. It alleges that Plaintiff had a "vested right to continue the non-conforming use already in existence at the time of the zoning ordinance." (FAC ¶ 61.) Again, the FAC reasserts the same theory without pleading any new facts that would alter that legal conclusion.

16

Because the amended pleading reasserts the same theory without curing the defect identified in *Perry I*, dismissal is warranted. Where a plaintiff is granted leave to amend and fails to cure identified deficiencies, the Court may dismiss the claim with prejudice. *See Altayyar v. Etsy, Inc.*, 731 Fed. App'x 35, 38 n.4 (2d Cir. 2018) (quoting *Porat v. Lincoln Towers Cmty. Assoc.*, 464 F.3d 274, 275 (2d Cir. 2006)). The law-of-the-case doctrine further counsels against revisiting a legal conclusion already resolved in the same litigation absent compelling reasons, and none are present here. *See Delville*, 23 F. Supp. 3d at 425 (quoting *Quintieri*, 306 F.3d at 1225).

The prior Article 78 proceeding independently reinforces this result. In that action, the state court determined that Plaintiff lacked a cognizable property interest in the Village-owned lot and concluded that the takings theory was without merit. (St. Ct. Act. ¶¶ 12–13.) The state court explicitly found that the Village holds ownership of the vacant lot in a governmental capacity and that it contains a cesspool requiring monitoring. (*Id.* ¶¶ 5, 13.) Because the state court was required to assess the merit of the claim in order to rule on the waiver, the conclusion was that it was "entirely without merit" as an alternative basis for the decision. (*Id.* ¶¶ 12–13.) Because that determination was fully litigated and necessary to the court's disposition, Plaintiff is estopped from re-litigating the existence of a legally protected property interest. *See Malloy,* 50 N.Y.2d at 53.

ii.     Independent Failure to Allege a Protected Property Interest

Even apart from the law-of-the-case doctrine and collateral estoppel, the FAC independently fails to plausibly allege a constitutionally protected property interest. Property interests protected by the Fifth Amendment "are not created by the Constitution," but instead arise from "existing rules or understandings that stem from an independent source such as state law." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). A plaintiff must allege a legitimate claim of entitlement, not merely a unilateral expectation or historical practice. *See Harrington v. County of Suffolk*, 607 F.3d 31, 34 (2d

17

Cir. 2010) ("To have a property interest. . . [plaintiff] must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead have a legitimate claim of entitlement to it" created by state law. (internal quotation marks omitted) (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005))).

Here, the FAC acknowledges that the Village owns the vacant lot. (FAC ¶ 4.) Plaintiff does not allege ownership of the parcel, a recorded easement, a leasehold interest, a contractual entitlement, or any judicially recognized prescriptive right. Instead, he relies on his family's long-standing use of the lot for parking. (*Id.* ¶ 5–6.) As this Court previously observed, municipalities holding land in their governmental capacity are not subject to loss of title through adverse possession or prescriptive easement. (*Perry I* ¶ 9.) Under New York law, longstanding permissive use of municipal land—even over decades—does not ripen into a legally cognizable property right where the municipality holds the property in its governmental capacity. *See Roth,* 408 U.S. at 577. Without a recognized entitlement under state law, a claim under the Fifth Amendment cannot be established as "[i]t is impossible to suffer a taking of property that one does not have" and, thus, there is no property interest for the Takings Clause to protect. *See RDB Properties, LLC v. City of Berwyn*, 884 Fed. Appx. 878, 881 (7th Cir. 2021).

Because Plaintiff has not plausibly alleged the existence of a protected property interest, the takings claim fails at the threshold. Accordingly, the Fifth Amendment claim must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants Village of Hillburn, Joseph Tursi, Adam L. Gordon, and Lawrence H. McMannis' motion to dismiss Plaintiff Dwaine C. Perry's claims.

Plaintiff was previously afforded an opportunity to amend his complaint in *Perry I*. The Court concludes that any further amendment of the Section 1983 claims would be futile, as the deficiencies

identified herein are substantive and cannot be cured through additional factual pleading. Accordingly, Plaintiff's Section 1983 claims are dismissed with prejudice.

Defendants' motion is granted without prejudice as to Plaintiff's ADA and Rehabilitation Act claims. Plaintiff is granted leave to file a Second Amended Complaint ("SAC") by April 17, 2026, in accordance with this Opinion & Order. Plaintiff is advised that the SAC will replace, not supplement, the FAC; therefore, any claims that he wishes to pursue must be included in, or attached to, the SAC. If Plaintiff fails to file a SAC within the time allowed, those claims that were dismissed without prejudice shall be deemed dismissed with prejudice. Should Plaintiff timely file a SAC, Defendants shall respond on or before May 18, 2026.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 24.

Dated: March 4, 2026
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

19